IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IAH-JFK AIRPORT PARKING CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-0157 |
| | § | |
| AMPCO SYSTEM PARKING, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This lawsuit focuses on claims of, *inter alia*, tortious interference with contractual relations arising out of a lease and later transactions related to a fifty-foot strip of land near Bush Intercontinental Airport. On August 2, 2004, this court granted summary judgment for ANDV 97, Inc. and related entities ANTAC, Inc. and American National Insurance Company, holding that, as a matter of law, they could not be liable to IAH-JFK. (Docket Entry No. 24 at 1–2). IAH-JFK has now moved for partial summary judgment on the tortious interference claim as to the remaining defendants. (Docket Entry No. 65). The remaining defendants have responded, (Docket Entry No. 87), and IAH-JFK has replied (Docket Entry No. 98). These defendants have in turn moved for summary judgment as to all the claims against them, (Docket Entry No. 70), to which IAH-JFK has responded, (Docket Entry No. 91), and defendants have replied, (Docket Entry No. 106). To clarify the standing issue raised in defendants' motion for summary judgment, this court requested supplemental briefing and argument from the parties. (Docket Entry No. 101). The parties have submitted

supplemental briefs and presented argument on this issue. (Docket Entry Nos. 105–08). The parties also exchanged views on the appropriate timing of this court's decision on the pending summary judgment motions in relation to mediation. After hearing argument and reviewing the motions, pleadings, briefs, responses, and the applicable law, this court now denies the motions for summary judgment in part, granting summary judgment only on IAH-JFK's motion to preclude defendants from invoking the affirmative defense of justification to the tortious interference claims. This court also orders the parties to attend a one-day mediation by January 30, 2006 and, if that is unsuccessful, sets this case for trial during a two-week period beginning Monday, February 27, 2006. The joint pretrial order filing deadline is February 13, 2006. The reasons for these decisions are explained below.

**I.      Background**

On November 26, 1996, A.P.C. Holdings Company ("APC"), controlled by Gerry Albright, leased a strip of land approximately 50 feet wide and one-half acre long from Budget Rent-a-Car Systems, Inc. ("Budget"). This strip runs in front of, and must be crossed to reach, a 26.25-acre parcel of land developed as a parking facility at the Bush Intercontinental Airport near Houston, Texas. (Docket Entry No. 67, ¶ 8). Section 20 of the lease between Budget and APC contains an antimerger provision, which reads:

> There shall be no merger of this lease or of the leasehold estate hereby created with the fee estate in the Premises or any portion thereof by reason of the fact that the same person may acquire or hold, directly or indirectly, all of part of the fee estate and this Lease or the leasehold estate hereby created or any interest in this Lease, and this Lease shall not be terminated for any cause except as expressly provided herein.

(*Id.* at ¶ 9). Section 40 of the lease contained an integration clause, stating that previous agreements were superceded. (*Id.* at ¶ 10).

On September 29, 1997, APC and several individual investors formed a Texas limited liability company, IAH-JFK Airport Parking Company, LLC ("IAH-JFK"), to purchase land and develop a parking garage near the airport. (*Id.* at ¶ 11). On January 30, 1998, IAH-JFK and ANTAC, a subsidiary of ANICO, formed a Texas general partnership, IAH97 Joint Venture ("IAH97"). (*Id.* at ¶ 12). On January 6, 1998, IAH97 leased the 26.25-acre tract to AMPCO System Parking, Inc. ("Ampco") for nineteen years. (*Id.* at ¶ 13). The agreement specified that IAH97 would build a parking facility on the 26.25-acre tract of land. (*Id.*). The agreement referenced the Budget Lease:

> The primary method for access to the Land will be over a fifty foot wide strip of land (the Budge Parcel) which is leased to the Landlord pursuant to the Indenture of Lease (the Budget Lease) dated November 26, 1996 between Budget Rent A Car Systems Inc. (such entity and its successors as landlord under the Budget Lease, herein called the Budget Lessor) and A.P.C. Holdings Inc., and the lessee's interest in such Budget Lease has been or will be assigned to the Landlord under this Lease on or before the Rent Commencement Date.

(*Id.*).

In July 2000, Budget offered to sell to IAH97 the one-half acre strip of land that ran in front of the parking garage. (*Id.* at ¶ 16). IAH-JFK alleges that Albright asked Ampco if it would be interested in financing the purchase of the Budget strip in exchange for a pricing concession in the Ampco lease, but Ampco did not respond. (*Id.*). On September 29, 2000, IAH97 purchased the Budget strip of land. (*Id.*). Ampco alleges that it was unaware of this

purchase. (Docket Entry No. 70 at 7).

The IAH97 Joint Venture Agreement contained a mutual buy-sell provision, which either party could trigger after five years. Under this provision, one joint venturer could demand that the other joint venturer either buy out the property interest of the demanding party or sell its shares to the demanding party. (Docket Entry No. 67, ¶ 19). On June 6, 2003, ANDV triggered the buy-sell provision. ANDV offered to sell the 26.25-acre tract and other IAH97 property to IAH-JFK for $21,500,000.00. (*Id.* at ¶ 20). IAH-JFK responded to the buy-sell notice, agreeing to buy out ANDV's interest. (*Id.*) IAH-JFK attempted to arrange financing with Whitney Bank, necessary to exercise its contractual buy-out opportunity. (*Id.* at ¶¶ 21–22). Whitney Bank asked Ampco to confirm that its lease from the joint venture was in good standing. (*Id.* at ¶ 22). Under the Parking Facility Lease, Ampco had to furnish a Subordination, Non-Disturbance and Attornment Agreement ("SNDA") upon request. (Docket Entry No. 70, Ex. 1 at 11). In response to Whitney Bank's inquiry, Ampco claimed that IAH97's purchase of the Budget strip of land had merged the fee and leasehold estates and that IAH-JFK had been wrongfully charging Ampco for the lease of the half-acre strip. (Docket Entry No. 67, ¶ 22). IAH-JFK alleges that Ampco knew that its claim of merger was legally wrong because the Budget Lease with APC contained an antimerger clause and three separate law firms had previously examined the issue and concluded that no merger resulted from IAH97's acquisition of the Budget property and the Budget Lease. (*Id.* at ¶¶ 27–29). IAH-JFK also argues the Ampco knew that its claim of having been overcharged was false because Ampco had paid under the Budget Lease for two

years after it knew of the purchase of the Budget parcel. (*Id.* at ¶ 18). IAH-JFK asserts that Ampco made these false claims in responding to Whitney Bank's routine request in order to frustrate IAH-JFK's ability to obtain bank financing for the purchase of the joint venture interests. (*Id.* at ¶ 28). IAH-JFK asserts that Ampco's false statements that it had been overcharged for leasing the parking facility and that there was a problem with the status of the Budget strip of land running in front of the parking facility caused Whitney Bank to withdraw its financing commitment to IAH-JFK. (*Id.* ¶ 32). IAH-JFK offered Ampco $350,000 to withdraw its claims of merger, but Ampco refused. (*Id.* at ¶ 30). IAH-JFK also brought to Ampco's attention information as to the earlier examination of the merger issue and the lawyers' conclusion that no such merger had occurred, but Ampco refused to change its position. IAH-JFK alleges that Ampco's refusal was in bad faith because Ampco knew it had no reasonable basis for the claims. (*Id.*). Additionally, on September 4, 2003, Ampco, armed with knowledge that IAH-JFK's window to buy out ANDV's interest was closing, allegedly used this bargaining leverage and demanded that IAH-JFK pay $1,500,000 to withdraw the claim. (*Id.* at ¶ 31).

On September 12, 2003, after the buy-sell deadline had passed, ANDV purchased IAH-JFK's share in the joint venture and the parties agreed to a settlement and release of claims. On August 2, 2004, this court granted summary judgment for ANDV 97, Inc. and related entities ANTAC, Inc. and American National Insurance Company, holding that, as a matter of law, the release precluded their liability to IAH-JFK. (Docket Entry No. 24 at 1–2). IAH-JFK has now moved for partial summary judgment on the tortious interference

claim against the remaining defendants. (Docket Entry No. 65). The remaining defendants have moved for summary judgment as to all claims. (Docket Entry No. 70).

## II.   The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir.2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373,

375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

**III.    IAH-JFK's Standing to Sue for Breach of Contract and Tortious Interference**

Defendants challenge IAH-JFK's standing to sue on three grounds. First, defendants argue that IAH-JFK lacks standing to sue under the parking lease between it and IAH97. Second, defendants contend that IAH-JFK lacks standing to sue Ampco for tortious interference with a loan commitment letter from Whitney National Bank that was executed by a not-yet-existing entity, IAH 03. Third, defendants argue that IAH-JFK lacks standing

to sue Ampco for interfering with the IAH97 Joint Venture Agreement to which it was a party because this claim is derivative from the claim that Ampco interfered with the loan commitment letter.

As to the parking lease, IAH-JFK argues that it has standing because, at all relevant times, it was either a general partner in the Joint Venture or was an intended beneficiary of any benefit or income resulting from the agreement between the Joint Venture and Ampco/ABM Industries. It argues that, as a fifty percent owner of IAH97, it was a donee beneficiary, entitled under the joint venture agreement to half of the profits of the venture. Defendants argue that IAH-JFK's mere membership in the Joint Venture does not confer the status of a third-party beneficiary. As to the tortious interference claims, IAH-JFK argues that it should be deemed a party to the contract or, in the alternative, an intended third-party beneficiary. IAH-JFK asserts that defendants cannot argue a lack of standing to claim tortious interference based on the fact that IAH 03, the entity to be created once the bank financing was obtained and the buy-out option exercised, never came into existence, because it was defendants' tortious interference that prevented IAH 03 from coming into existence.

Standing is a jurisdictional requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[T]he irreducible constitutional minimum of standing is composed of three elements. First, the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Walker v. City of Mesquite*, 169 F.3d 973, 978–79 (5th Cir. 1999) (quoting *Lujan*, 504 U.S. at 560–61) (footnote, citations, and internal quotation marks omitted). Failure to establish any one of these three standing requirements deprives a federal court of subject matter jurisdiction to hear a lawsuit. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002).

In determining whether a third party has a right to enforce a contract, courts look to the express intent of the contracting parties. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). To recover on a contract, a third party must demonstrate that the contracting parties intended to secure a benefit for that third party and that the contracting parties entered into the contract directly for the third party's benefit. *Methodist Hosps. of Dallas v. Wal-Mart Stores*, No. 02-0656, 2003 WL 21266775 at *6 (N.D. Tex. May 30, 2003) (unpublished opinion). A court may not imply or create third-party beneficiary rights unless they are expressly intended by the contracting parties and plainly spelled out in the four corners of the contract. *Stine*, 80 S.W.3d at 589 (citing *MCI*, 995 S.W.2d at 651). To qualify as an intended third-party beneficiary, a party must show that he or she is either a "donee" or "creditor" beneficiary of the contract rather than an incidental beneficiary. *Id.* "An agreement benefits a 'donee' beneficiary if, under the contract, 'the performance promised will, when rendered, come to him as a pure donation.'" *Id.* "[A]n agreement benefits a 'creditor' beneficiary if, under the agreement, 'that performance will come to him in

satisfaction of a legal duty owed to him by the promisee.'" *Id.* "This duty may be an indebtedness, contractual obligation or other legally enforceable commitment owed to the third party." *Id.*; *see also Thompson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415 (Tex. App.–Austin 1995) (holding that one of three individuals who created a joint venture was not an intended third-party beneficiary of a contract entered into by the joint venture and therefore lacked standing to sue on the contract); *Lenz v. Chicago & N.W.R. Co.*, 86 N.W. 607 (Wis. 1901) ("Clearly, if the performance of a contract must necessarily benefit the third person, an intent to accomplish that result must be presumed. Payment direct to the third person is, of course, a benefit to him, and, if that is required by a contract, the intent to so benefit is beyond question. It is not essential that the individual claimant should have been specifically in mind. If he falls within a class to whom payment is agreed to be made, that suffices.").

    IAH-JFK has not asserted claims against defendants arising out of the parking facility lease. Instead, IAH-JFK asserts claims arising out of the IAH97 Joint Venture Agreement and the frustrated Whitney Bank loan commitment. The summary judgment evidence does not support defendants' argument that only IAH 03, not IAH-JFK, would have standing to sue for tortious interference with the Whitney Bank loan. IAH-JFK secured the Whitney Bank loan and signed the agreement with the bank. The loan documents requested that Whitney Bank fund the project by delivering the proceeds to what would be a new entity, IAH 03. (Docket Entry No. 65, Ex. 29; Docket Entry No. 106, Exs. 9–10). Because the loan was never made, IAH 03 never came into existence. Under defendants' theory, there is no

party that has standing to sue for tortious interference because the only entity that would have standing never came into existence—despite the fact that the alleged reason it did not come into existence is defendants' tortious interference, and regardless of the facts as to the relationship between IAH-JFK, Whitney Bank, and the proposed new entity. IAH-JFK was a party to the agreement and suffered a real and concrete injury as a result of the defendants' alleged tortious acts that interfered with the agreement and prevented the loan from issuing under the commitment. IAH-JFK has standing to sue for tortious interference with this loan agreement.

The summary judgment evidence shows that IAH-JFK was a party to the Joint Venture Agreement. G. Phillip Albright executed the agreement in his capacity as Director of IAH-JFK. (Docket Entry No. 106, Ex. 3 at 46). IAH97 was created solely to benefit its joint venture partners, including IAH-JFK, evidenced by Albright's execution of the contract as Director of IAH-JFK and the SNDA provision of the lease, which was explicitly intended to benefit any future purchaser of the land and which required that Ampco certify that the lease was in good order to any future entity that loaned money to the future landlord. (Docket Entry No. 70, Ex. 1 at 11). To the extent defendants argue that IAH-JFK's claims under the Joint Venture Agreement are duplicative of the claims relating to the Whitney Bank loan, those arguments do not relate to standing.

Defendants' motion for summary judgment based on lack of standing is denied.

### B.     Breach of Contract

Defendants argue that Ampco did not breach its obligation to issue a SNDA under the

Parking Lease. Defendants contend that they had no obligation under the Parking Lease to issue a SNDA to IAH-JFK Airport Parking Co. and that they provided the SNDA requested by Albright. The defendants further contend that the estoppel certificate issued by Ampco did not breach the lease.

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant that (4) results in damages to the plaintiff. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App. – Corpus Christi 2001, no pet.); *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 397 (Tex. App.– El Paso 1998, pet. denied); *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. – Houston [1st Dist.] 1997, no pet.); *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App. – El Paso 1993, no writ).

The parties do not dispute that a valid contract existed or that IAH-JFK suffered damage from defendants' alleged breach. Disputed issues of triable fact material to the remaining elements exist, including the scope of defendants' duty under the contract and whether defendants breached that duty. Defendants' motion for summary judgment on the breach of contract claim is denied.

**IV.    IAH-JFK's Tortious Interference Claims**

IAH-JFK argues that defendants were aware at all relevant times of the business relationship represented by the IAH97 Joint Venture Agreement and the prospective business opportunity it presented. IAH-JFK moves for partial summary judgment as to its claim that

the defendants tortiously interfered with the IAH97 Joint Venture Agreement and destroyed the business opportunity that IAH-JFK had in 2003. In response to IAH-JFK's motion for partial summary judgment as to tortious interference, defendants argue that they issued the SNDA and the estoppel certificate as required by the Parking Lease and that defendants' assertion of a claim against IAH-JFK was merely the valid exercise of a legal right. Defendants argue that the doctrine of justification bars IAH-JFK's tortious interference claims.

To establish tortious interference with existing contractual relations, a plaintiff must prove (1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) that was the proximate cause of the plaintiff's damages, and (4) that resulted in actual damage or loss. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). The person who induces the breach cannot be a contracting party. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995).

The record shows that IAH-JFK had the opportunity to buy out its business partner, and that Whitney Bank was prepared to loan money sufficient to exercise the buy-out opportunity if Ampco provided appropriate documentation and an estoppel certificate for any claims arising out of the Budget tract. The record also includes statements by Ampco officials that they wanted to disturb the negotiations and records of two demands to withdraw the claims, one for $350,000 and one for $1,500,000, presented by Ampco to IAH-JFK at key moments in the deal. The record further shows that because Ampco refused to remove its claim to rents due from the purported merger of the Budget tract, Ampco was unable to

secure financing to complete the transaction within the specified time: both Whitney Bank and another investor Ampco approached specifically refused to provide financing because of this claim. These facts could lead a factfinder to infer that Ampco tortiously interfered with this contract, although there are disputed issues as to the tortious interference claim.

Once the plaintiff establishes the elements of tortious interference, the defendant may prevail by establishing the affirmative defense of justification. *Texas Beef and Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996). The justification defense may be established through proof of the exercise of either the defendant's own legal rights or a good-faith (but ultimately mistaken) claim to a colorable legal right. *Id.* at 211 (citing *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex. 1984)). "Thus, if the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense, and the motivation behind assertion of that right is irrelevant." *Id.* (internal citations omitted). The defenses of justification and privilege may be raised to rebut a claim of tortious interference with prospective business relations "only to the extent that they are defenses to the independent tortiousness of the defendant's conduct." *Wal-Mart Stores, Inc. v. Sturgess*, 52 S.W.3d 711, 727 (Tex. 2001).

According to the lease, Ampco could have made a claim against IAH-JFK or reduced or abated rent payments if the land became unavailable through a merger. (Docket Entry No. 70, Ex. E at 5). IAH97 purchased the Budget tract two-and-a-half years before seeking the Whitney Bank loan. During that period, Ampco never filed a demand or lawsuit against IAH-JFK, nor did it stop paying rent. IAH-JFK has introduced evidence that Ampco had

notice of the IAH97 purchase, but did not raise any claim that a merger had resulted during the nearly two-and-a-half years before IAH-JFK requested the estoppel certificate. (Docket Entry No. 65, Exs. 10–12) (demonstrating actual knowledge of the transaction by Ampco); (Docket Entry No. 65, Ex. 14) (warranty deed filed October 5, 2000, demonstrating constructive knowledge by Ampco); *see Heci Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) ("[R]eal property records constitute constructive notice."). The summary judgment record includes advice from attorneys to Ampco that no merger had occurred because IAH97 did not intend to create a merger of estates through the transaction. Ampco's deputy general counsel also admitted that "the doctrine of merger was not applicable and . . . the lease remained in full force and effect." (Docket Entry No. 91, Ex. 4 at 201–02). Additionally, in 2001, Rich Kindorf in Ampco's Los Angeles office specifically requested, and later received, research on the merger issue. (Docket Entry No. 91, Ex. 15). Ampco, however, never pursued or raised a claim against IAH-JFK. Ampco's source of reliance on the claim is the opinion of an attorney who was not given the opportunity to review the underlying facts fully, and who qualified his answer. Ampco has not raised a fact issue material to determining whether the justification defense applies. The undisputed evidence in the summary judgment record shows that it had no actual legal right to raise the merger and related problems to Whitney Bank, and did not have a good-faith belief in an apparent right that is supported by objective evidence, as required for a justification defense. *See Prudential Ins. Co. of Am. v. Fin. Review Srvs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000). As a matter of law, this court finds that defendants cannot invoke the justification defense.

Defendants may not present a justification defense to the jury.

Defendants' motion for summary judgment on the tortious interference claim is denied. Fact issues similarly preclude IAH-JFK's motion for partial summary judgment on this claim, except as to this court's finding that defendants may not raise the justification defense.

## V.    IAH-JFK's Conspiracy Claim

Defendants argue that, because Texas does not recognize an independent cause of action for civil conspiracy, this claim must fail as the underlying tort claims fail. Defendants further contend that an entity cannot legally conspire with itself, and a parent corporation cannot conspire with a fully-owned subsidiary.

Under Texas law, a civil conspiracy is defined as: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)) (additional citations omitted). Conspiracy requires proof of specific intent. *Id.* "It is not the agreement itself, but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action." *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1980) (citing *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex. 1964)). Conspiracy to commit a tort requires that the parties conspire to commit an intentional tort. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996).

Because the intentional tort claims survive the motion for summary judgment, defendants' first argument fails. IAH-JFK alleges a conspiracy between defendants Ampco and Anico, which are not in a parent-wholly-owned-subsidiary relationship. Although Anico has been dismissed from this case, the conspiracy claim can proceed. Issues of triable fact material to determining whether Ampco conspired with Anico to tortiously interfere with IAH-JFK's business opportunity remain. Defendants' motion for summary judgment as to the conspiracy claim is denied.

**VI.     Conclusion**

The motions for summary judgment are denied in part and granted in part. Ampco may not assert a justification defense as to the tortious interference claim. IAH-JFK has standing to assert tortious interference, breach of contract, and conspiracy claims against defendants.

The parties are ordered to attend a one-day mediation session by **January 30, 2006.** If the case does not settle, it is set for trial to begin during the two-week period starting on **February 27, 2006.**   The joint pretrial order deadline is **February 13, 2006.**

SIGNED on December 22, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge